IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL A. ROMERO and
BONNIE L. SCOTT,

      Plaintiffs,

vs.                                                                          No. CIV 11-0255 RB/LFG

SALVADOR SAMBRANO,
in his individual capacity, BOARD OF COUNTY
COMMISSIONERS OF GUADALUPE COUNTY,
JONATHAN BERNAL, in his individual capacity,
THE CITY OF SANTA ROSA, and CHARLES
BACA, in his individual capacity,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendants Board of County Commissioners of Guadalupe County and Jonathan Bernal's ("Guadalupe Defendants'") Motion for Qualified Immunity, or Alternatively, Motion for Summary Judgment as to Plaintiff Scott, (Doc. 74). Jurisdiction arises under 28 U.S.C. §§ 1331 and 1367. Having considered the submissions of counsel, the record, and relevant law, the Court grants this Motion.

**I.**     **Background**

Plaintiffs are husband and wife. On October 23, 2010, Plaintiffs argued at their residence in Santa Rosa, New Mexico, and a guest dialed 911. Defendant Jonathan Bernal, a former Guadalupe County Sheriff's Deputy, and Defendant Salvador Sambrano, a New Mexico State Police Officer, arrested Plaintiffs at a nearby party and brought criminal charges against them. Plaintiffs filed suit in this Court asserting claims under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act. Plaintiff Scott alleges claims for unlawful arrest, battery, false imprisonment,

excessive force, malicious prosecution, and conspiracy. The Guadalupe Defendants move for summary judgment and assert qualified immunity. Scott opposes the motion.

## II.     Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In cases where the moving party will not bear the burden of persuasion at trial, it bears the initial responsibility of identifying an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "If the movant meets this initial burden, the burden then shifts to the nonmovant to 'set forth specific facts' from which a rational trier of fact could find for the nonmovant." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (quoting FED. R. CIV. P. 56(e) (2007 version)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1142 (10th Cir. 2009).

## III.    Statement of Facts

The Court must view the facts in the light most favorable to Scott, the non-moving party. *See id.* Thus, all reasonable inferences are drawn and factual ambiguities are resolved in her favor. On Saturday, October 23, 2010, a birthday party for Plaintiff Michael Romero's son was held at the home of Romero's father and stepmother ("in-laws' house"), located about 100 yards from Plaintiffs' residence. (Doc. 89-2, Scott Dep. at 37-38, 60). Scott left the party after Romero's

2

stepmother, Edwina Romero, insulted Scott. (*Id*. at 37). Scott went to her nearby home where her thirteen-year-old son, Tyler Scott and Tyler's thirteen-year-old friend Mike Garcia, were playing video games in Tyler's bedroom. (*Id*. at 31, 32). Romero followed Scott Plaintiffs' residence and asked Scott to return to the party, but she refused. (*Id*. at 46). Plaintiffs argued for four or five minutes, but they did not engage in a physical altercation. (*Id*. at 45, 48). Scott's yelling scared Tyler and Mike. (*Id.* at 47). Mike called 911 on his cell phone. (*Id*. at 46-47). Romero went back to the party. (*Id*. at 46). After Romero and left, Ms. Scott began to cry. (*Id*. at 45-46).

Deputy Bernal was in his police unit when he heard the dispatch of a domestic disturbance with a possible stabbing at Plaintiffs' residence. (Doc. 74-1, Bernal Dep. at 17-18). Deputy Bernal, Officer Sambrano and City of Santa Rosa Police Officer Charles Baca[1] responded to the call. (*Id.* at 29; Doc. 79-1, Sambrano Dep. at 27). En route, the dispatcher informed the officers that a caller stated that there had not been a stabbing. (Doc. 79-5, Def. Ex. D, Sambrano Recording at 2:40-3:02). Scott tried to cancel the 911 call, but the officers proceeded to Plaintiffs' residence, as state policy imposes a duty on responding law enforcement officers to ensure that people involved in domestic disputes are safe. (Doc. 89-3, Sambrano Dep. at 77).

When Deputy Bernal and Officer Salvador Sambrano arrived at Plaintiffs' residence, the officers encountered the boys out front. (Sambrano Recording at 5:27). Mike Garcia informed Officer Sambrano that Romero pushed Scott and Romero was in a house down the road. (*Id.* at 5:30). Scott came out and the officers observed she was limping and she had been crying. (Scott Dep. at 46-47, 54; Sambrano Recording at 5:37 ). Officer Sambrano testified in his deposition that

---

[1] Plaintiffs accepted an offer of judgment in the amount of $5,001.00 from the City of Santa Rosa and stipulated to dismissal of the claims against Officer Charles Baca. (Docs. 69 and 101).

Tyler and Mike were talking fast as if they were excited. (Sambrano Dep. at 75-76).

On the recording from Officer Sambrano, Scott told the boys to get in the house. (Sambrano Recording at 6:06-6:16). Officer Sambrano said if something was wrong the officers were going to figure it out. (*Id.* at 6:15). Scott told the officers that "[they] could figure it out all [they] wanted," she worked for the judiciary, and domestic violence was not a law enforcement matter if there was an "unwilling victim." (*Id.* at 6:30-6:37). Officer Sambrano told Scott that she could "be unwilling all she wanted" and the officers were going to talk with the "gentleman," meaning Romero. (*Id.* at 6:39).

During her deposition, Scott explained that she stopped Tyler and Mike from speaking with the officers as she felt the officers should speak to her. (Scott Dep at 53). In response to Officer Sambrano's inquiry as to what was going on, Scott responded there had been a misunderstanding. (*Id*. at 55) Officer Sambrano asked about the reported stabbing. (*Id*.) Scott responded that nobody was stabbed. (*Id*.) Officer Sambrano asked Mike and Tyler where Romero had gone. (*Id*. at 59). The boys pointed to the in-laws' house, where the party was underway. (*Id*. at 60).

Deputy Bernal and Officer Sambrano proceeded to the in-laws' house and Scott went back inside her residence with Tyler and Mike. (Scott Dep. at 61). On Officer Sambrano's recording, Romero told the officers that Scott had hit him. (Sambrano Recording at 8:31-8:45). Within a few minutes, Scott heard screaming coming from the in-laws' house. (Scott Dep. at 62). Scott told the boys to stay inside and she ran to the in-laws' house. (*Id.*) When Scott arrived, she found Romero lying halfway out the door with Deputy Bernal and Officer Baca holding him down. (*Id.*) The party-goers were screaming "Stop. You are hurting him. He can't breathe." (*Id.* at 62-63).

Because Romero was wiggling, Scott went over to tell him to quit moving. (*Id.* at 63). Scott saw that Romero could not breathe and that was why he was fighting back and trying to get up. (*Id.*) Romero's chest was on a step and the officers were smashing his face on the old broken cement of the patio. (*Id.* at 63-64). Romero was handcuffed, but he struggled to get up. (*Id.* at 64). Romero's head was bleeding. (*Id.*) Scott told Romero to quit moving. (*Id.*)

Officer Sambrano told Scott to shut up and sit down. (Scott Dep. at 65). Scott complied and sat on a chair on the patio about five feet away from where Deputy Bernal and Officer Baca were holding Romero on the ground. (*Id.* at 65-66). Officer Sambrano stomped on Romero's back. (*Id.*) Edwina Romero screamed and waived her hands back and forth in the air. (*Id.* at 66, 68). Romero's father clutched his chest. (*Id.* at 66). The party-goers screamed at the officers to stop. (*Id.*) Scott yelled that Romero could not breathe. (*Id.*) Edwina Romero was hysterical. (*Id.*) Scott believed that if she was able to convince Edwina Romero to stop screaming and sit down, the party-goers would calm down and the officers would hear that the guests were saying that Romero could not breathe. (*Id.* at 67-68). According to Scott's deposition testimony, Edwina Romero was yelling, but not at Scott. (*Id.* at 69). Scott got up and grabbed Edwina Romero by both wrists. (*Id.* at 68-69). Officer Sambrano and Deputy Bernal testified in their depositions that Scott pushed Edwina Romero in the face. (Doc. 79-1, Def. Ex. A, Sambrano Dep. at 103; Doc. 79-4, Def. Ex. C, Bernal Dep. at 81).

Edwina Romero testified in her deposition that, during the incident on the patio, she was "kind of upset with" Scott. (Doc. 89-1, E. Romero Dep. at 29). Edwina Romero said to Scott something along the lines of, "Are you happy now?" or, "Is this what you wanted" because she felt that Scott had been unreasonable by "acting up" and "taking off." (*Id.* at 30). Scott said

5

something back to Edwina Romero and pushed her in the upper part of her Romero's body. (*Id.* at 30-31). Edwina Romero pushed Scott back and said, "Leave me alone." (*Id.*)

Scott testified in her deposition that, before Scott could say anything to Edwina Romero, Officer Sambrano grabbed Scott by the neck, threw her to the ground, pushed her face sideways into the patio, pushed his elbow or knee into her back, and handcuffed her. (Scott Dep. at 69-70). After Scott was handcuffed, Officer Sambrano held her down with his knee on her back for five to ten minutes. (*Id.* at 69-70). As a result, Scott's neck was sore and stiff for two weeks and her back was sore and stiff for three months. (*Id.* at 100-101). Scott did not seek medical treatment and she used Ibuprofen to relieve the soreness and stiffness. (*Id.*)

Notwithstanding the fact that Officer Sambrano restrained Scott, the officers agreed at the scene that Deputy Bernal would complete the arrest of Scott and Officer Sambrano would complete the arrest of Romero. (Doc. 89-6, Bernal Dep. at 22). Scott was placed in Officer Baca's city police car and transported to the police station. (Scott Dep. at 73). Deputy Bernal charged Scott with battery, in violation of N.M. STAT. ANN. § 30-3-4, and she was booked into the jail where she was held without bond until her arraignment on the morning of Monday, October 25, 2010. (Doc. 74-3, Def. Ex. C, Scott Dep. at 89-91). Bond was set at $500 and after she posted ten percent, Scott was released on bond. (*Id.* at 90). Scott hired an attorney to represent her and agreed to pay him $1,000, but she did not pay him due to lack of funds. (*Id.* at 92). Deputy Bernal agreed to dismiss the case if Scott donated $100 to his favorite charity. (*Id.* at 94). Scott wrote a check for $100 to Team Builders to get the case over with, the case was dismissed, and the bond money was refunded. (*Id.* at 95). On December 14, 2010, the criminal complaint against Scott was dismissed. (Doc. 89-5).

**IV.    Discussion**

The Guadalupe Defendants contend that they are entitled to qualified immunity and summary judgment on Scott's claims.  Section 1983 provides that "[e]very person" who acts under color of state law to deprive another of constitutional rights "shall be liable to the party injured in an action at law."  42 U.S.C. § 1983.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable officer would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In contrast to a standard motion for summary judgment, which places the burden on the moving party to point out the lack of any genuine issue of material fact for trial, a motion based on a claim of qualified immunity imposes the burden on the plaintiff to show "both that a constitutional violation occurred and that the constitutional right was clearly established at the time of the alleged violation."  *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009) (internal quotations omitted).  If either of these requirements is not met, the defendant is entitled to qualified immunity and summary judgment is appropriate.

"When a warrantless arrest is the subject of a § 1983 action, the arresting officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest."  *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1191 (10th Cir. 2007).  Probable cause exists if "facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense."  *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).  "Even law enforcement officials who 'reasonably but

mistakenly conclude that probable cause is present' are entitled to immunity." *Id.* Because the standard for probable cause is objective, "[t]he subjective belief of an individual officer as to whether there was probable cause for making an arrest is not dispositive." *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004). Whether a reasonable officer would believe that there was probable cause to arrest in a given situation is based on the totality of the circumstances. *Id.* at 897.

Scott was arrested for battery, which is defined as "the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner." N.M. STAT. ANN. § 30-3-4. Scott does not deny intentionally touching Edwina Romero; rather Scott denies that she did so in a rude, insolent or angry manner. Scott's perception is not dispositive because "the probable cause inquiry is an objective one." *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012). Although the Court must construe the facts in the light most favorable to Scott, "a plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "[M]ore specifically, as with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." *Id.* (internal quotation marks omitted).

Both Officer Sambrano and Deputy Bernal testified in their depositions that they saw Scott push Edwina Romero in the face. Edwina Romero testified in her deposition that Scott pushed her in the upper part of her body. Scott testified in her deposition that she grabbed Edwina Romero by the wrists in the midst of a chaotic, emotionally charged melee while Edwina Romero was screaming. Viewed objectively and in the light most favorable to Scott, the facts of record

8

establish that Deputy Bernal had probable cause to arrest Scott for battery.

Scott's claims for false imprisonment, malicious prosecution, and conspiracy presuppose that Deputy Bernal did not have probable cause to arrest Scott. *See Anthony v. Baker*, 767 F.2d 657, 662 (10th Cir. 1985); *Dickson v. City of Clovis*, 242 P.3d 398, 404 (Ct. App. 2010)  In that Deputy Bernal had probable cause to arrest Scott for battery, the facts of record do not support her claims for wrongful arrest, false imprisonment, malicious prosecution or conspiracy.  As a result, summary judgment will be granted in favor of the Guadalupe Defendants on these claims.

Scott alleges both unlawful arrest and excessive force arising from a single encounter.  The Tenth Circuit has explained:

> [I]n cases involving claims of both unlawful arrest and excessive force arising from a single encounter, it is necessary to consider both the justification the officers had for the arrest and the degree of force they used to effect it.  If the plaintiff can prove that the officers lacked probable cause, he is entitled to damages for the unlawful arrest, which includes damages resulting from any force reasonably employed in effecting the arrest.  If the plaintiff can prove that the officers used greater force than would have been reasonably necessary to effect a lawful arrest, he is entitled to damages resulting from that excessive force.  These two inquiries are separate and independent, though the evidence may overlap.  The plaintiff might succeed in proving the unlawful arrest claim, the excessive force claim, both, or neither.

*Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007) (en banc).  Thus, the fact that the arrest was lawful does not necessarily foreclose the excessive force claim, which is governed by the Fourth Amendment's "objective reasonableness" standard.  *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 664 (10th Cir. 2010).  Under this standard, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  The ultimate issue is whether the officer's use of force was objectively reasonable in light of the surrounding facts and circumstances as seen from the perspective of a reasonable officer at the

scene. *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005) (*citing Graham*, 490 U.S. at 388).

In this case, Scott testified in her deposition that Officer Sambrano, and not Deputy Bernal, took her to the ground and handcuffed her. Subsequently, the officers decided that Deputy Bernal would complete the paperwork on Scott's arrest. Scott does not allege that Deputy Bernal used any force in excess of that required to effectuate her lawful arrest. Viewed in the light most favorable to Ms. Scott, no facts of record support Scott's claims for excessive force and battery against Deputy Bernal.

**THEREFORE,**

**IT IS ORDERED** that Defendants Board of County Commissioners of Guadalupe County and Jonathan Bernal's Motion for Qualified Immunity, or Alternatively, Motion for Summary Judgment as to Plaintiff Scott, (Doc. 74), is GRANTED.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**